UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SMS DEMAG AG                                                                    PLAINTIFF


v.                              CASE NO. 3:06-CV-0060 GTE


XTEK, INC.                                                                      DEFENDANT

## ORDER

Presently before the Court are Defendant's Motion to Compel (Docket No. 123),

Defendant's Motion for Protective Order (Docket No. 124), Defendant's Second Motion to

Compel (Docket No. 131), and Defendant's Supplement to Defendant's Second Motion to

Compel (Docket No. 135).

**I.  Defendant's Motion to Compel (Docket No. 123)**

On April 24, 2007, Defendant filed its Motion to Compel.  The Court will address each of

Defendant's requests, highlighted below, in turn:

**i.  Confirm that the documents responsive to Xtek's final document requests will be
made available for inspection in a convenient and orderly manner in Düsseldorf and
Hilchenbach commencing on May 14, 2007, and provide the exact location where
the documents will be made available;**

The Court has already ordered that the documents requested in Xtek's final document

requests shall be made available for inspection in a convenient and orderly manner by May 14,

2007.  However, the Court clarifies that this directive applies to the documents in both the

Düsseldorf and Hilchenbach facilities.  The Court further orders Plaintiff to provide Xtek with

the exact location where the documents will be made available on or before May 7, 2007.  While

the documents in both locations are to be ready for inspection by May 14, 2007, it appears that

the parties agree that simultaneous inspection at both facilities will not occur.  Therefore, Xtek is

directed to select the first facility at which it will inspect the documents, and inform SMS of their

decision on or before May 8, 2007.

> **ii.  Identify which of Xtek's document requests SMS will be responding to with "business documents" at the Düsseldorf facility, and which of Xtek's document requests SMS will be responding to with "technical documents" at its Hilchenbach facility;**

> **iii.  State the approximate number of responsive documents to be produced at each of the German facilities;**

SMS asserts that it does not have the information necessary to comply with these

requests.  SMS states that SMS previously advised Xtek that approximately 80% of the

responsive documents are located in Hilchenbach, with the remainder in Düsseldorf.  The Court

determines that no further response to the stated requests is required by SMS.

> **iv.  Confirm that SMS will produce the already-copied documents for inspection, and where those documents will be produced; and**

The Court directs SMS to produce the already-copied documents for inspection in

Germany in accordance with this Order.  The Court further directs SMS to communicate to Xtek

the location at which the already-copied documents will be produced for inspection on or before

May 7, 2007.

SMS states, "query whether Xtek should be provided <u>any</u> access to documents already

copied by SMS prior to Xtek paying the costs incurred by SMS in copying those documents.

SMS had no right to inspect Xtek's documents prior to having paid for them."  On April 4, 2007,

the Court found that "Xtek is liable for the reasonable copying costs incurred by SMS in

producing the estimated ten percent of the original document requests." The Court directed SMS to submit a summary of expenses to Xtek, with a courtesy copy to the Court, which it did by letter dated April 17, 2007.  SMS suggested, as one option, the following with regard to the already-copied documents: "Xtek now pays $65,812.18 for the costs incurred to date" and "Xtek inspects the Copied Documents in Germany, selects which of the Copied Documents Xtek would like finalized, SMS finalizes the selected documents, Xtek pays SMS the Finalization Costs for only the selected documents, and SMS ships the selected documents." Xtek states that it has agreed to this procedure, except for the condition that Xtek now pay $65,812.18 because the reasonable costs of copying the documents is in dispute.

Xtek objected to SMS's summary of expenses by letter dated April 19, 2007.  In a letter to the Court dated April 25, 2007, SMS informed the Court of these events and stated that SMS was working to address the objections outlined in Xtek's letter, and "will respond promptly to that letter, with a copy to the Court." SMS is directed to respond, with a copy to the Court, on or before May 7, 2007.  If the issue of these costs cannot be resolved on or before May 11, 2007, SMS is directed to file a formal motion to recover these costs.  SMS is directed not to delay access to these already copied documents pending resolution of the cost reimbursement issue.

**v.  Produce the index of documents responsive to Xtek's final document requests sufficiently in advance of the document inspection so that Xtek may reasonably prepare for the inspection.**

Plaintiff states that it has the responsibility of producing relevant files for Xtek's inspection in accordance with Xtek's final document requests, and that the index to SMS's archives and a person familiar with the archives will be available at Xtek's inspection. Defendant states that it will greatly reduce the time and expense associated with the document

inspection if Xtek has the relevant parts of the index well in advance of the inspection. Additionally, Defendant notes that the index is "most likely" in German and will need to be translated beforehand. Defendant also requests that the Court specifically order that "the person familiar with SMS's archives be continually available during the inspection and that this person immediately provide Xtek with whatever help it requires."

The Court rules that Plaintiff's response is adequate. It will not have to produce the index or any portion thereof. However, as discussed below, the index to SMS's archives and a person familiar with the archive will be available at the time of Defendant's inspection. The Court assumes that Defendant will have a list of the documents it seeks. Plaintiff will produce those documents.

## II. Defendant's Motion for Protective Order (Docket No. 124)

Defendant requests the entry of a Protective Order stating that "Xtek's document inspection take place with no one present except those persons designated by Xtek; and that SMS be prohibited from having anyone present in the room where the document inspection is to take place, or videotaping or otherwise observing, monitoring or supervising Xtek's document inspection."

SMS responds with its own request for a Protective Order. Xtek replies with proposed alternative and more specific conditions on the document inspection than that stated in its motion. The Court has attempted to group the related requests. SMS's proposed conditions are labeled (a), while Xtek's proposed conditions are labeled (b). The Court will address each in turn.

4

**(1)     (a)  Only outside counsel for Xtek should be permitted to inspect SMS documents**

**(b) Xtek may have at the inspection anyone permitted under the Protective Order to see the documents being inspected**

SMS has no objection to outside counsel having access to the information to be produced, but objects to other persons, specifically Xtek's in-house personnel, having "such unrestricted and unrecorded access to SMS highly confidential business and technical information."  SMS claims that the provisions of the Protective Order only authorize access to SMS documents that are "ultimately produced to Xtek's outside counsel."

Xtek claims that the Protective Order entered by the Court on December 5, 2006, specifies who can have access to a parties' confidential information, and that Paragraph 7 allows Xtek's in-house counsel, Mr. Sennett, access to SMS's Highly Confidential information.

The Court rules that Mr. Sennett along with outside counsel may be present and assist with production of documents specifically ordered to be produced, but will not have unrestricted access to other records.

**(2)     (a)  SMS should have the right to monitor the inspection of its documents;**

**(b) SMS will provide a reasonably comfortable private room where Xtek may inspect the documents.  SMS may have no more than one of its personnel present in the room located so that he/she cannot overhear Xtek personnel discussions or observe their note taking.  SMS will not record the document inspection by video, audio or in any other way.**

**SMS will have continuously available during inspection a person familiar with SMS's archives who will immediately provide Xtek with whatever help it requires relating to the inspection.**

SMS states that Xtek's demand to deny SMS's presence during the inspection of its original files, the integrity of which is crucial to the worldwide conduct of SMS's business, is

unrealistic and unsupportable.  SMS asserts that its security procedures do not permit unescorted

visitors in SMS facilities, and requests that at least one representative be present at all times to

maintain the integrity of SMS's files, establish and maintain an orderly inspection of the

documents, and to attend to any related needs of Xtek counsel in the course of the inspection.

SMS also requests that it have at least one attorney present at the inspection to confer with the

SMS employees in facilitating the production and removal of files for inspection.  The Court

agrees with SMS on these points and so rules.

   Xtek requests that the Court order SMS to have a "person familiar with SMS's archives

who will immediately provide Xtek with whatever help it requires relating to the inspection"

continuously available during the inspection.  It states that SMS has already committed to having

such a person available, but the additional condition insures that Xtek will not have to

continually wait for the archive person to "show up" and that the person will have the necessary

knowledge to be of help.  Xtek requests a reasonably comfortable private room for inspection of

the documents and asks that only one of SMS's personnel be present in the room so that he/she

cannot overhear Xtek personnel discussions or observe their note taking.

   The Court directs SMS provide a reasonably comfortable place for inspection of the

documents by Xtek and to have a person familiar with SMS's archives continuously available

during the inspection to assist Xtek's counsel in expeditiously producing the requested

documents.  SMS may also have one attorney present at the inspection to facilitate the production

of documents.  However, SMS's personnel and in-house counsel should, to the best of their

ability, locate themselves so as not to intrude into Xtek personnel's discussions or to monitor

their note taking.  SMS will not record the document inspection by video, audio, or in any other

way, but may escort Xtek personnel when Xtek personnel are outside of the inspection area.

(3)     **(a) The person(s) inspecting SMS documents should be prohibited from having brief cases, computers, cameras, cell phones, dictation equipment, and any other form of device for recording, photographing, scanning, or in any other way memorializing the content of any of the SMS documents provided for inspection;**

**Except for the list of SMS documents to be copied, the person conducting Xtek's inspection of SMS documents should not be allowed to write or otherwise memorialize any other information viewed in the course of the inspection, which will ensure that the only sources of SMS's sensitive information will be the copied documents provided to Xtek;**

**(b)  Xtek personnel may take notes (in long hand, on a laptop computer, via dictating machine, or in any other way) and may converse among themselves during the inspection.  Any notes taken or conversations during the inspection will be subject to the Protective Order.**

**Xtek personnel may carry with them their usual brief cases and hand bags.  SMS security personnel may inspect these on entering or leaving the SMS facility to the same extent they would inspect anyone else's personal belongings.**

**Xtek personnel may have an use their personal cell phones during the inspection. Any confidential information communicated will be subject to the Protective Order.**

SMS states that it does not allow visitors to enter SMS facilities with the aforementioned

items and provides means for visitors to securely store same until they depart.  SMS states that

the Protective Order will be undermined unless such devices are prohibited because the only

information Xtek is entitled to under the Protective Order is information contained in documents

that are Bates numbered and reviewed for Confidential and/or Highly Confidential SMS

information.  SMS also asserts that if Xtek personnel are allowed to take substantive notes, the

provisions of the Protective Order would be circumvented, and a new source of SMS proprietary

information will be created in the course of inspection.

Xtek states that the Protective Order clearly limits the use and disclosure of all information a party has designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL, which would include notes and conversations. Xtek further states that SMS has provided no written SMS policies demonstrating that SMS does not allow brief cases, handbags, cell phones, computers, etc., and the Court is not bound by SMS's unreasonable conditions.

The Court agrees that the conditions suggested by SMS are too restrictive. The Court rules that Xtek personnel may take notes (in long hand, on a laptop computer, via dictating machine, or in any other way) and may converse among themselves during the inspection. Any notes taken or conversations during the inspection will be subject to the Protective Order. Xtek personnel may carry with them and use their usual brief cases, hand bags, and cell phones. SMS security personnel may inspect these on entering or leaving the SMS facility to the same extent they would inspect anyone else's personal belongings. Any confidential information communicated will be subject to the Protective Order.

It must be remembered that Defendant does not have carte blanche authority to rummage through Plaintiff's records. The process here is intended to identify and produce documents specifically requested.

**(4)    (a)  The person conducting Xtek's inspection of SMS documents must prepare a contemporaneous list of the documents that Xtek wishes to have copied, and SMS will make a copy of that list at the conclusion of each inspection session;**

**(b) Xtek may designate the documents it wants copied by listing the documents or by marking them with a "post-it note," or both**

**SMS will allow Xtek access to the requested documents on a reasonable basis. It will not unreasonably restrict the number of SMS documents available in the document inspection room, such as only permitting a few documents to be inspected at a time.**

8

**Xtek will be permitted to inspect the documents at all times during SMS's normal business hours.**

**SMS will not designate all of the documents as CONFIDENTIAL or HIGHLY CONFIDENTIAL, but will only designate those documents as permitted by the Protective Order.**

The Court finds that SMS's proposal that Xtek list the documents it wishes to have copied is reasonable. SMS will allow Xtek access to the requested documents on a reasonable basis. It will not unreasonably restrict the number of requested SMS documents available in the document inspection area. Xtek will be permitted to inspect the documents at all times during SMS's normal business hours. SMS will not designate all of the documents as CONFIDENTIAL or HIGHLY CONFIDENTIAL, but will only designate those documents as permitted by the Protective Order.

**(5)       (a)  Xtek should be required to (1) retain a copy service in Düsseldorf and Hilchenbach to copy the SMS documents selected by Xtek at Xtek's expense and (2) immediately identify such service(s) to SMS to ensure that SMS has no objection to the service(s) retained by Xtek**

The Court finds that this proposal by SMS is reasonable. Xtek shall retain a copy service in Düsseldorf and Hilchenbach to copy the SMS documents selected by Xtek at its expense. Said copy services shall directly bill Xtek for the services rendered. Xtek shall identify the copy service(s) to SMS on or before May 7, 2007. SMS shall communicate any objection to the copy service to Xtek on or before May 9, 2007.

**(6)**       SMS also states that Xtek's professed right to create "attorney work product" in the course of the inspection does not trump expediting Xtek's inspection and copying, the clear import of the Protective Order, SMS's normal security procedures, or SMS's confidentiality

concerns.  In general, the Court agrees.  However, this statement constitutes argument rather than a provision that should be contained in a Protective Order.

### III.  Defendant's Second Motion to Compel and Supplement (Docket Nos. 131, 135)

Defendant moves this Court for an Order compelling Plaintiff SMS to:

(1) Clearly and completely state all objections to Xtek's Restated, Clarified and Consolidated Document Requests to Plaintiff;

(2) Produce all documents requested by those requests pursuant to the Court's April 4, and April 13 Orders; and

(3) State exactly what documents SMS will be producing in response to each of Xtek's Restated, Clarified and Consolidated Document Requests to Plaintiff.

On April 13, 2007, this Court ordered Defendant to submit a final version of its document requests that restate and incorporate all amendments previously made in order to narrow and make precise the scope of the document requests.  This was not an invitation for any new or additional requests.  The Court stated that by April 27, 2007,  Plaintiff may object to or seek clarification of said document requests if informal discussions with Defendant do not clarify same.  The Court further stated, in this event, the parties will immediately seek the Court's rulings on the contested issues.

Xtek states that it served its document requests on April 16, 2007.  On April 24, 2007, SMS requested a telephone conference, but eventually declined to hold the telephone conference because Xtek required that it be recorded.  On April 26, 2007, SMS sent Xtek a letter stating that the "requests, in violation of Xtek's representations and the Court's instructions, contain unauthorized revisions and additions, which SMS wholly rejects."  SMS stated that it would produce documents in accordance with Xtek's first set of document requests as revised by the

authorized amended requests contained in the Restated, Clarified and Consolidated Document

Requests to Plaintiff.

In a letter dated April 27, 2007, SMS states:

(1) Only Requests Nos. 3, 8, 11, 25, 26, 28, 29, 57, 58 and 59 appear to perhaps meet some of the criteria contemplated by the Court in authorizing Xtek to provide revised requests.  However to the extent that Xtek may consider these requests to be governed by different general definitions and/or different general instructions, they may be new rather than revised requests as contemplated by the Court and SMS.

(2) Requests Nos. 30, 37, 41, 43-45, 47-56, 60-63, 65, 70 and 71 are identical to August 29th requests.  Therefore, they are objected to as duplicative and SMS's prior responses to these requests apply.  However, to the extent that Xtek has reserved these requests with different instructions and/or different definitions, and Xtek for those reasons may consider these requests to be "different," then they are new requests and should be served as such.  For these reasons, SMS objects to their presence in this document and considers them no further pending resolution of this dispute by the Court.

(3) Requests Nos. 1, 2, 4-7, 9, 10, 12-24, 27, 31-36, 38-40, 42, 46, 64, 66-69 and 72-74 are revisions of Xtek's August 29th requests.  These revisions exhibit none of the criteria contemplated by the Court and therefore were not authorized by the Court.  Their presence in this document is contrary to representations that Xtek made to the Court and SMS.  They are new requests and should be served as such. For these reasons, SMS objects to their presence in this document and considers them no further pending resolution of this dispute by the Court.

(4) Requests Nos. 75-79 also are new requests, and for that reason do not belong in this document.  Whether these requests were among the document demands that accompanied the subpoena that Xtek served on Mr. Malan is beside the point – those demands were to Mr. Malan personally, whereas these requests are directed to SMS as a party.  These requests therefore are new document requests, and their presence in this document is contrary to representations that Xtek made to the Court and SMS.  They should be served upon SMS as new requests.  SMS objects to their presence in this document and considers them no further pending resolution of this dispute by the Court.

SMS concludes that it objects to providing formal objections and/or formal requests for clarification until the Court determines which, if any, of the requests are authorized revised document requests.

Xtek, in its Supplement to Defendant's Second Motion to Compel, argues that SMS refuses to produce documents responsive to requests identical to the original ones because they are "duplicative," but SMS refuses to produce documents responsive to a revised request where any change whatsoever was made because the requests are "new," thereby creating a "Catch 22." Xtek also submits a "red-lined" comparison of its original document requests and its revised document requests.

SMS replies that Xtek represented to the Court, and the Court contemplated, that Xtek's revised requests would be limited to eight document requests: Requests 3, 8, 11, 25, 26, 29, 57 and 59, which were identified in Xtek's March 1 and March 30 letters.  The Court agrees that the Court's April 13, 2007 Order contemplated that only these eight document requests were at issue. During the telephone conference held prior to the issuance of the Order, Xtek quoted an e-mail sent to SMS, which states, "You should treat our present document requests as comprising our original requests as revised by my March 1st letter and during our telephone conference of May [sic, March] 27 as memorialized in the letter dated March 30, 2007, to you."  Then, Xtek stated, "Those are the document requests . . . We aren't going to change them."

The Court finds that the additional revisions of the document requests were not anticipated by the Court's April 13, 2007 Order.  Regarding Requests Nos. 3, 8, 11, 25, 26, 28, 29, 57, 58 and 59, the Court finds that SMS shall produce these documents as stated in Defendant's Restated, Clarified and Consolidated Document Requests to Plaintiff.  However,

these requests are governed by the original general definitions and general instructions.  SMS shall object to and/or seek clarification concerning these requests on or before May 8, 2007.

SMS shall produce Requests Nos. 30, 37, 41, 43-45, 47-56, 60-63, 65, 70 and 71 and SMS's prior responses to these requests apply.  The original general definitions and general instructions apply to these document requests.  SMS shall produce Requests Nos. 1, 2, 4-7, 9, 10, 12-24, 27, 31-36, 38-40, 42, 46, 64, 66-69 and 72-74 as originally requested and SMS's prior responses apply.

Requests Nos. 75-79 are new requests and should be served upon SMS as such. Furthermore, the Court declines to shorten the response period for Xtek's Second Set of Document Requests to Plaintiff.  Of course, there is nothing prohibiting SMS from agreeing to produce these documents before they are due.  Furthermore, there is nothing prohibiting Xtek from delaying its inspection to allow for the additional document requests to become due.  As always, the parties are encouraged to work together to bring about resolution to issues such as these without the necessity of Court intervention.  The Court declines to award attorneys' fees or costs to either party.


Accordingly,

FOR THE REASONS STATED ABOVE, IT IS HEREBY ORDERED THAT Defendant's Motion to Compel (Docket No. 123) be, and is hereby, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED THAT Defendant's Motion for Protective Order (Docket No. 124) be, and is hereby, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED THAT Defendant's Second Motion to Compel (Docket No.

131) and Defendant's Supplement to Defendant's Second Motion to Compel (Docket No. 135) be,

and are hereby, GRANTED in part, and DENIED in part.

IT IS SO ORDERED THIS 3rd day of May, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE