UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SMS DEMAG AG                                                                                              PLAINTIFF

v.                                              CASE NO. 3:06-CV-0060 GTE

XTEK, INC.                                                                                                DEFENDANT

## ORDER

Presently before the Court are Plaintiff's Motion to Compel Xtek, Inc. to Pay Cost of Document Production (Docket No. 150) and Plaintiff's Motion to Compel and for Protective Order (Docket No. 166).

**I. Plaintiff's Motion to Compel Xtek, Inc. to Pay Cost of Document Production (Docket No. 150)**

Plaintiff SMS moves the Court for an Order directing Defendant Xtek to pay the cost of SMS's document production in the amount of $65,812.18. In support of its motion, Plaintiff submits the invoice from the copy service, Behrens & Schuleit, which (as translated and converted into U.S. Dollars) includes $12,397.50 for document preparation, $5,681.34 for copying, $28,778.70 for printing drawings, $5,918.06 for database programming, $2,434.00 for cancellation cost, and $10,489.99 in tax. Plaintiff also sets forth its costs compared to Defendant's costs, and sets forth Xtek's objections and its response to those objections.

Specifically, Plaintiff states that on April 19, 2007, Xtek objected to the failure of SMS to explain the cancellation cost, database programming/hr, and whether the copying expenses were incurred in making copies or duplicates of documents actually requested by Xtek or whether documents were copied that were not required by Xtek, suggesting that this issue be resolved by

1

Xtek's document inspection in Germany. Also, Plaintiff states that Xtek complained that SMS copied approximately the same number of documents that Xtek copied, but SMS's copying expenses exceeded Xtek's.

In a letter dated May 7, 2007, Plaintiff responded to the objection to the cancellation cost, database programming, and document preparation as follows:

1. **Cancellation Cost.** The copy company ("B&S") had done production planning and had allocated resources for the copy work for Xtek. After Xtek demanded that SMS stop copying, B&S's planned and allocated capacities were no longer needed. However, the cancellation of the order cost B&S money because it had allocated resources that otherwise would have been available for other work. This is the basis for the cancellation cost.

2. **Database Programming.** Database Programming was necessary in order to put the Bates numbering on the copies, and to retrieve and convert old Word Perfect-formatted electronic versions of documents (no longer supported by SMS's presently used computer software) to PDF format.

3. **Document Preparation per Hour.** This is the cost of organizing the documents for copying, which included removing them from files and removing paper clips and staples in order to feed the originals through the copy machine.[1]

Plaintiff stated that all of the documents copied were called for by one or more of Xtek's original document requests.[2] Plaintiff also explained that the copies made included many drawings, which are more expensive to copy than standard sheets of paper.[3] Finally, Plaintiff stated that

---

[1] Exhibit C, Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

[2] Exhibit C, Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

[3] Exhibit C, Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

2

Xtek's copying charge to SMS for drawings was $1.25 per square foot, but SMS's per square foot charge to Xtek for copying drawings is estimated to be about $0.57 per square foot.[4]

In its motion, Plaintiff adds that its copying charge for sheet pages is $0.12 per page, approximately half of what Xtek's copy service charged. As to the database programming charge, Plaintiff states that Xtek charged $2,249.20 for Bates labeling for about 45,000 documents, while SMS's copy service charged $5,918.20 for Bates numbering as well as converting the format of documents for the same number of documents. Plaintiff also states that the cancellation charge was the result of Xtek's demand to cancel the copying order. Plaintiff explains that the document preparation charge cannot be compared with Xtek's summary of charges because Xtek's vendor did not provide an itemization of that charge, and there is insufficient information to compare the charges.

Xtek first argues that Plaintiff's motion was prematurely filed because on the day Plaintiff filed its motion, Xtek requested an explanation of how the cancellation costs, database programming and document preparation costs were calculated, and why it was being charged to retrieve and convert electronic documents. Xtek states that it did not receive a response from SMS. Additionally, Xtek states that it also indicated that it would be in a better position to respond to the issues raised after reviewing the documents in Germany.

However, Xtek states that after review of the documents in Germany, and after consulting with SMS's representative, it is clear that the document production expenses are not reasonable. In her affidavit, Monica H. McPeek, an attorney for Xtek, states that on May 23, 2007, during

---

[4]Exhibit C, Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

document inspection, Xtek asked to speak with the person "familiar with SMS's archives."[5] She also states that Xtek asked Dr. Sunderman, SMS's designee, whether SMS had made any attempt to remove documents from its production that were not responsive to Xtek's document requests.[6] She states that Dr. Sunderman indicated that non-responsive documents had not been removed, and that he admitted that many of the over 750 binders of documents that were produced were not reviewed by anyone at SMS to determine whether they were responsive to Xtek's requests. Xtek asserts that the request included those documents that SMS had already copied for Xtek.[7]

Xtek also asserts that SMS has refused to provide a statement from the copy company explaining the charges for cancellation cost, database programming, and document preparation. Xtek further states that SMS has refused to provide the written agreement or communications between SMS and the copy service to determine if the cancellation costs were ever discussed or agreed to by SMS. Xtek argues that the cancellation cost would not have bene necessary if SMS had produced only those documents that were responsive to Xtek's document requests, rather than attempting to "pull off a 'document dump'". Xtek also states that although exact numbers cannot be known at this time, since Xtek is still negotiating the copying of the documents with SMS, the number of documents that were actually responsive to Xtek's document requests represent a very small percentage of the total number produced.

---

[5]Exhibit 2, Defendant's Response to Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

[6]Exhibit 2, Defendant's Response to Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

[7]Exhibit 2, Defendant's Response to Plaintiff's Motion to Compel Xtek to Pay Cost of Document Production.

Additionally, Xtek states that it asked SMS for an explanation of what database programming was actually performed, why it was necessary to convert electronic files, and why the documents were not simply provided in electronic format, as required by the Federal Rules of Civil Procedure. Xtek also states that it requested an itemization of the database programming fee associated with Bates labeling versus document conversion and why the process took a week. Xtek further alleges that SMS did not have all of the documents to be produced available for inspection on the first day of inspection in Germany, and other deficiencies with the document inspection.

SMS replies by stating that Xtek's challenges are based upon "Xtek counsel's ethically-challenged direct communications with an SMS employee in the course of Xtek's inspection of SMS documents." SMS also states that Xtek has failed to provide concrete examples of documents that had been copied but purportedly not requested since Xtek had the opportunity to review the "separately-maintained collection of SMS documents that had already been copied" at the document inspection in Germany.

SMS states that Ms. McPeek's affidavit is misleading because SMS produced only binders having responsive documents and had removed no documents from such binders because had it done so, SMS would have destroyed the integrity of its files and created chaos. It also states that the general content of each binder is ascertainable by SMS's indexes.

The Court, in its Order dated February 16, 2007 Order, stated:

> [A] summary of expenses and supporting documentation of any copying expenses incurred by the parties in producing documents shall be submitted to opposing counsel. It is further ordered that the party receiving said documents will communicate receipt of the summary of expenses and supporting documentation and any objections to the claimed expenses to opposing counsel within two

business days of receipt of said summary and supporting documentation. If the party receiving said documents has no objection to the claimed expenses, the receiving party shall submit payment of the claimed expense within five business days of receipt of the summary and supporting documentation. The producing party shall ship the documents within two business days of receipt of payment.

If, however, the party receiving said documents objects to the claimed expenses, the parties will attempt to resolve the issue within three business days of notice of the objection. If the matter cannot be resolved within three business days after notice of the objection, the parties are directed to informally notify the Court of the dispute. If necessary, the Court may require the parties to file motions on the issue. **In resolving any disputes that arise regarding this issue, the Court will look to expenses already claimed and paid by the parties.**

**Although it appears that the parties have agreed to copy documents that appear to be responsive to the requests for document production and ship said documents, the Court cautions the parties that if the parties wish to avoid over-production of documents and objections to copying costs due to over-production, the parties may choose to inspect the documents before copying costs are incurred. See Federal Rule of Civil Procedure 34. However, the court also notes that the parties are expected to product those documents that appear to be reasonably responsive to the document requests in good faith to avoid this issue.**

In the same order, the Court ordered Plaintiff to pay Defendant $27,320.20 in copying expenses.

In the Order dated April 4, 2007, the Court noted that, according to SMS, Xtek demanded that SMS stop its document production because Xtek did not want to incur the costs of SMS producing the large number of documents that Xtek had requested, and SMS halted document production, although it had already incurred costs. The Court also stated that "Xtek is liable for the reasonable copying costs incurred by SMS in producing the estimated ten percept of the original document requests. The Court directed SMS to submit a summary of expenses to Xtek by April 9, 2007, which was later extended to April 17, 2007, and to follow the procedure set forth above.

After comparing the costs paid by SMS to Xtek and the arguments of the parties, the Court finds that Xtek is liable to SMS for the full amount claimed by SMS for document production. SMS shall finalize the documents copied by July 3, 2007. Xtek shall submit payment in the amount of $65,812.18, plus the cost of finalizing the documents, to Cohen Pontani Lieberman & Pavane LLP as SMS counsel on or before July 6, 2007. SMS shall ship the documents within two business days of receipt of payment.

**II.  Plaintiff's Motion to Compel and for Protective Order (Docket No. 166)**

SMS moves this Court for an Order requiring Xtek to provide the list of SMS documents inspected in Germany that Xtek wishes to have copied and implementing SMS's recommended procedure for the copying and production of SMS documents. SMS states that Xtek inspected 758 volumes of SMS documents and now demands that its copy service remove each of the volumes from SMS's premises to make copies of the cover pages and approximately 25,000 additional documents contained within those volumes. However, SMS asserts that Xtek refuses to provide the list of documents to be copied as ordered by the Court.

SMS states that the list is necessary because the 758 volumes are SMS's original archival records, and many of these old and fragile documents do not have duplicates maintained elsewhere. Additionally, SMS states that these documents are critical to SMS's ongoing business. SMS asserts that without the list, SMS would have no way of determining if any document contained in the volumes was lost and Xtek's copy service could simply deny responsibility if any document is lost or destroyed without such a record.

SMS also recommends the following procedure for the copying and production of the documents:

1. Xtek should provide a copy of the Protective Order to the copy service and advise the copy service that the documents that copy service will be receiving for copying include HIGHLY CONFIDENTIAL AND CONFIDENTIAL documents that are subject to the provisions of the Protective Order, and that the copy service must maintain the confidentiality of the documents and abide by the Protective Order.

2. Xtek should provide a list of the documents to be copied to SMS.

3. SMS will arrange with the copy service for the documents listed to be copied in a reasonable manner, i.e., timely pick up and return of the documents to SMS in the same condition and order as when inspected by Xtek.

4. The copy service first should make an electronic file of the copied SMS documents, serially number the scanned documents electronically using the prefix SMSG, and provide that electronic file of documents to SMS counsel ("CPLP").

5. CPLP will review the electronic file of documents to:

    (a) determine whether all of the documents on Xtek's list of documents to be copied were copied;

    (b) determine whether any SMS documents were copied that Xtek did not designate for copying;

    (c) designate appropriate confidentiality markings according to the Protective Order; and

    (d) ensure that no privileged documents were copied.

6. If applicable, CPLP will (a) provide Xtek and the copy service written notice of any scanned and numbered SMS documents that should not have been copied and the basis for such notice, and/or (b) provide Xtek and the copy service written notice of any SMS documents that Xtek designated for copying in its list that apparently were not copied.

7. CPLP will provide Xtek and the copy service the numbers of documents to be labeled CONFIDENTIAL or HIGHLY CONFIDENTIAL.

8. The copy service can then further mark the documents to be produced with the correct confidentiality designation under the Protective Order and make Xtek a hard copy of the documents from the electronic file.

    9.  All electronic files made by the copy service will remain the property of SMS.

    10.  Except for CPLP review, Xtek will bear all of the costs of the foregoing and the shipping expenses for the hard copy.

    11.  The copy service will promptly return all original documents to SMS in the same order and condition as they were in when provided to the copy service.

Xtek argues that the vast majority of documents were not numbered, were not labeled with the document request numbers to which they were responsive, and were not otherwise easily identifiable.  Xtek states that after the first day it realized that any list would be extremely burdensome, time consuming, and exceedingly expensive to make.  Xtek submits an affidavit from Ms. McPeek stating that Xtek advised Dr. Sunderman that Xtek could not compile a list of documents.  She states that Dr. Sunderman advised Xtek that he would call SMS's "New York attorneys" that same evening and advise them that Xtek indicated the list could not be made.  She also states that no representative of SMS ever mentioned anything else about the list while she was in Germany, despite Dr. Sunderman's statement that he would report back to Xtek about what the New York attorneys said about the list.  Xtek also provides a copy of the copying instructions, which reference documents marked with post-it notes.  Xtek proposes that the copying be allowed to proceed as proposed, or that SMS be required to either make the copies of the documents itself or supervise Xtek's copy service making the copies.

Xtek sets forth its proposed procedure for copying and producing SMS documents.  Xtek states that it has already advised SMS that it agrees "that the copy service should be notified of the requirements of the Protective Order, and [Xtek] will see that it is done."[8]  Xtek proposes that no list be required, as discussed above.  Xtek states that it has no objection to SMS arranging for

---

    [8]Xtek notes that if the Court orders SMS to make the copies itself, the issue will be moot.

and allowing the timely pickup of the documents by Xtek's copy service and the return of documents to SMS, so long as the documents are produced within the two weeks allowed.

Xtek states that it has no intention to pay for the making of any electronic files, but that SMS may do so at its own expense. Xtek states that it sees no real problem or danger with the chance of "over production," and therefore, subsections (a) and (b) of SMS's proposal number 5 need not be included. Xtek also states that it has no objection to CPLP marking the documents, so long as it is done within the two week time frame set by the Court, and it will not pay to have the documents shipped to CPLP for review.

On April 13, 2007, the Court ordered that "Plaintiff shall produce the documents identified by Xtek for copying two weeks from the date Defendant identifies the documents to be copied." On May 3, 2007, the Court found that "SMS's proposal that Xtek list the documents it wishes to have copied is reasonable." SMS's proposal was stated as, "The person conducting Xtek's inspection of SMS documents must prepare a contemporaneous list of the documents that Xtek wishes to have copied, and SMS will make a copy of that list at the conclusion of each inspection session." In so holding, the Court rejected Xtek's proposal that "Xtek may designate the documents it wants copied by listing the documents or by marking them with a 'post-it note,' or both.

Xtek states that "the Court did not indicate when the list was to be compiled and/or provided to SMS, what the list was to entail, the required format of the list, nor the information that was to be provided in the list." Xtek also cites the Court to authority for the proposition that the Court should endeavor to keep expenses relating to discovery to a minimum. However, the language used by the Court, and the Court's reference to "SMS's proposal," makes it clear that

the method of identifying documents was to be in the form of a list to be completed and provided to SMS during the document inspection in Germany.  The Court is now left to deal with Xtek's failure to comply with the Court's instructions.  When a party fails to comply with the instructions of the Court the first time, additional costs will obviously be incurred.

SMS's motion is granted.  Xtek is directed to provide a list of documents to be copied, as previously ordered, on or before July 16, 2007.  Xtek and SMS are directed to confer on this issue on or before June 29, 2007, and specifically address the dates for Xtek's representatives to have access to SMS's facilities for the purpose of creating the list and what information should be on the list.  The parties should also discuss how the volumes are to be identified.

Regarding the process for the copying and production of documents, the Court adopts the process proposed by SMS, but imposes certain additional deadlines.  The Court is of the opinion that the making of electronic files will expedite the discovery process.  SMS represents to the Court that the difference in cost between (1) sheet feeding originals to produce one hard copy and (2) sheet feeding originals to produce an electronic copy of the documents and then generating hard copies from the electronic file ("blowbacks") is *de minimus*.  However, at this point, the pace of the production of the documents is largely in the hands of Xtek's copying service.  Therefore, for the production of these particular documents, the following process shall be implemented:

> 1.  On or before July 16, 2007, Xtek shall provide a copy of the Protective Order to the copy service and advise the copy service that the documents that copy service will be receiving for copying include HIGHLY CONFIDENTIAL AND CONFIDENTIAL documents that are subject to the provisions of the Protective Order, and that the copy service must maintain the confidentiality of the documents and abide by the Protective Order.

2. On or before July 16, 2007, Xtek should provide a list of the documents to be copied to SMS.

3. SMS will arrange with the copy service for the documents listed to be copied in a reasonable manner, i.e., timely pick up and return of the documents to SMS in the same condition and order as when inspected by Xtek.  SMS shall make the documents to be copied available to the copy service on or before July 18, 2007.

4. The copy service first should make an electronic file of the copied SMS documents, serially number the scanned documents electronically using the prefix SMSG, and provide that electronic file of documents to SMS counsel ("CPLP").

5. Within five days of receipt of the electronic file of documents from Xtek's copy service, CPLP will review the electronic file of documents to:

 (a) determine whether all of the documents on Xtek's list of documents to be copied were copied;

 (b) determine whether any SMS documents were copied that Xtek did not designate for copying;

 (c) designate appropriate confidentiality markings according to the Protective Order; and

 (d) ensure that no privileged documents were copied.

6. If applicable, CPLP will (a) provide Xtek and the copy service written notice of any scanned and numbered SMS documents that should not have been copied and the basis for such notice, and/or (b) provide Xtek and the copy service written notice of any SMS documents that Xtek designated for copying in its list that apparently were not copied within five days of receipt of the electronic file of documents from Xtek's copy service.

7. Within five days of receipt of the electronic file of documents, CPLP will provide Xtek and the copy service the numbers of documents to be labeled CONFIDENTIAL or HIGHLY CONFIDENTIAL.

8. The copy service can then further mark the documents to be produced with the correct confidentiality designation under the Protective Order and make Xtek a hard copy of the documents from the electronic file.

9. All electronic files made by the copy service will remain the property of SMS.

10.  Except for CPLP review, Xtek will bear all of the costs of the foregoing and the shipping expenses for the hard copy.

11.  The copy service will promptly return all original documents to SMS in the same order and condition as they were in when provided to the copy service.

Accordingly,

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Xtek, Inc. to Pay Cost of Document Production (Docket No. 150) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel and for Protective Order (Docket No. 166) be, and it is hereby, GRANTED.

IT IS SO ORDERED this 26th day of June, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE