UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**SMS DEMAG AG**                                                                                                      **PLAINTIFF**

v.                                         **CASE NO. 3:06-CV-0060 GTE**

**XTEK, INC.**                                                                                                                    **DEFENDANT**

<u>**ORDER**</u>

Presently before the Court are Plaintiff's Motion to Show Cause (Docket No. 185) and Defendant's Motion to Strike (Docket No. 172).

**I. Plaintiff's Motion to Show Cause**

In its motion, Plaintiff requests that the Court order Xtek to show cause why it should not immediately order its copying vendor to return all of SMS's binders to SMS. Plaintiff asserts that it is unreasonable for Xtek's copy service to have advised SMS on July 20, after taking possession of almost all of SMS's binders relating to its patented spindle technology, that the binders would not be returned to SMS until the middle or end of September.

In the Court's Order dated June 26, 2007, the Court directed that "SMS will arrange with the copy service for the documents listed to be copied in a reasonable manner, i.e. timely pick up and return of the documents to SMS . . . SMS shall make the documents to be copied available to the copy service on or before July 18, 2007." In accordance with the Order, Xtek's copy service picked up the binders containing the documents on July 18, 2007. According to SMS, on July 20, 2007, Xtek's copy service advised an SMS employee that Xtek had told the vendor that the vendor had until August 31, 2007, to scan the documents and that after scanning the documents, the documents would be reviewed and would not be returned to SMS until the middle or end of

1

September. SMS states that the binders are essential to SMS's conduct of its business, and a competent copy service should reasonably be able to scan the documents within one week.

On July 20, 2007, SMS's counsel asked Xtek's counsel when the binders would be returned to SMS and sought to confirm that the vendor would return the binders as soon as the documents were scanned. On the same date, Xtek responded that it would comply with the requirements of the Court's June 26, 2007 Order, and questioned what SMS meant by "only scan the SMS documents." SMS asserts that because the copy service will make hard copies from the electronic file, Xtek's vendor does not need to remain in possession of SMS's binders after the scanning occurs. SMS further asserts that Xtek's advice to its copy service that it has until August 31 to scan the documents is outrageous, and appears to be a purposeful, vindictive act calculated to interfere with SMS's business. SMS filed the present motion on July 23, 2007.

Xtek replies by stating that it replied to only a portion of SMS's July 20th e-mail because it had to wait until Monday, July 23rd to get the copy service's latest estimate because the inquiry came after the close of business of the copy service. Xtek makes it clear in their July 24th e-mail to SMS that it was "shocked" at the projected completion date of August 31st. Xtek suggested several solutions, including a proposal to agree to modify the Court's Order to release the binders to SMS as they are scanned, to allow SMS access to binders that it has an immediate need for, and to consider the use of another copy service. On July 25th, SMS responded by demanding the immediate return of all of SMS's documents. On that same date, Xtek informed SMS that the copy service is "shooting for August 17th as the target to complete the scanning of the SMS documents," and as of July 27th was "on track to meet its August 17th target." Xtek notes that the sworn testimony submitted in support of its response demonstrates that Xtek was diligently

pressing the copy service to quickly complete the copying, and at no time did Xtek tell the copy service that it could take until August 31st to complete the copying.

After accounting for the number of documents to be copied, Xtek's copy service should be able to complete the project by August 17, 2007, i.e. roughly a quarter of the time SMS's vendor needed.  The Court expects Xtek to insist this work be completed as soon as practically possible, but on this record concludes that SMS's motion should be denied.

## II.  Defendant's Motion to Strike

Defendant Xtek moves this Court to strike those parts of Plaintiff's Motion to Compel and for Protective Order (Docket No. 166) and Plaintiff's Reply Concerning SMS's Motion to Compel Xtek, Inc. To Pay Cost of Copying SMS Documents (Docket No. 167) that raise personal attacks on Defendant's counsel.  Specifically, Xtek references Plaintiff's characterization of Xtek's counsel's actions in speaking with Dr. Sundermann as "ethically-challenged," "improper," and "in violation of its ethical obligations."

Ms. McPeek, counsel for Xtek, states in her affidavit that Xtek's communications with Dr. Sundermann occurred in the presence of SMS's attorney, Nadine Oeste.  Ms. McPeek further states that no Xtek representatives or attorneys ever spoke to any representative of SMS outside of the presence of Ms. Oeste because Ms. Oeste insisted that no one was allowed outside her presence except to go to the bathroom.  Defendant states that "[t]hese types of irrelevant, untrue and incivil personal attacks do not advance the litigation, serve only to denigrate the legal profession, and should be stricken from te record."  Defendant further states that "Plaintiff's counsel should also be admonished to refrain from these types of personal attacks in the future."

The Court notes that the lack of civility and professional respect between and among counsel frequently has been evidenced during the course of this litigation, much to the dismay of the Court. While the Court will deny Xtek's motion, it will use this latest outbreak as an occasion to remind all counsel of their obligations to opposing counsel and to the Court. In the future, unjustified and excessive language will result in appropriate sanctions. More specifically, as it is clear that much of the unnecessary motion practice before this Court is due to the actions and inactions of counsel for the parties, rather than the parties themselves, the Court will not hesitate to impose monetary sanctions directly (and unreimbursable) upon counsel in the future.

The Court further notes that in presenting the Court with new discovery issues, dramatic references to previous discovery issues are unnecessary. The Court is well aware of the history of discovery in this case, and need not be reminded every time a motion regarding discovery is filed. These unnecessary references are simply a waste of the Court's time, and the time of all involved in this matter.

Finally, it is not the Court's preference to micro-manage the discovery process in this case as it has been forced to do thus far. Although the Court has already admonished the parties and counsel for the parties regarding this issue, the Court will once again urge the parties to reasonably and civilly negotiate discovery issues that may arise in the future. Part of such negotiation includes timely responses to communications by opposing counsel and a willingness to reasonably discuss and even compromise when the parties are able to do so in keeping with their professional obligations to their clients. The Court hopes that counsel will let past incivilities remain in the past, and will begin anew with a clean slate.

Accordingly,

IT IS THEREFORE ORDERED that Plaintiff's Motion to Show Cause (Docket No. 185) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (Docket No. 172) be, and it is hereby, DENIED.

IT IS SO ORDERED this 30th day of July, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE