**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 3 0 2007

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

SMS DEMAG AG                                        **PLAINTIFF**

VS.                          NO. 3:06CV0060GTE

XTEK, INC.                                          **DEFENDANT**

### CONSENT JUDGMENT

Based on the submissions of the parties and all matters appearing of record, the Court makes the following findings of fact:

1.      The Court finds that SMS Demag AG ("SMS") and Xtek, Inc. ("XTEK") have entered into a full and final settlement of all claims asserted in this action.

2.      The terms and conditions of the settlement are set forth in a written Settlement Agreement attached and incorporated herein by reference as Exhibit A to this Consent Judgment.

3.      The Court approves the terms and conditions of the Settlement Agreement and incorporates those terms and conditions into this Consent Judgment as additional terms and provisions of this Consent Judgment.

4.      Both parties have submitted themselves to the jurisdiction of this Court for all purposes in connection with the Settlement Agreement and this Consent Judgment.

Based on the foregoing findings of fact, the Court makes the following conclusions of law:

1.      The Court has jurisdiction over the parties and the subject matter of this action.

2.      In accordance with the stipulations and agreement of the parties, as set forth in the Settlement Agreement, the Court enters this Consent Judgment.

3.      The Court adopts the terms of the Settlement Agreement as the substantive provisions of this Consent Judgment.  The mutual undertakings, obligations and duties of the parties as set forth in the Settlement Agreement are obligations and duties of the parties pursuant to this Consent Judgment, and the Court may and shall enforce the obligations and duties of the parties set forth in the Settlement Agreement as if they were set out word for word in this Consent Judgment.

4.      Both parties should be and are hereby permanently enjoined to abide by the terms of the Settlement Agreement and this Consent Judgment.

5.      The Court will maintain continuing jurisdiction to enforce this permanent injunction.

6.      The protective order entered in this case shall survive the dismissal of this action.

7.      All other claims for relief and causes of action asserted in the complaint and counterclaim should be and are hereby dismissed with prejudice, the parties to bear their own costs, fees and expenses.

This is a full and final judgment on which execution and process may issue.

Dated: November **30** 2007.

Honorable G. Thomas Eisele
United States District Judge
Eastern District of Arkansas


STIPULATED AND APPROVED BY COUNSEL FOR THE PARTIES:

| | |
|---|---|
| WILLIAMS & ANDERSON PLC<br>111 Center Street, 22nd Floor<br>Little Rock, AR 72201 | WOMACK, LANDIS, PHELPS, McNEILL &<br>   McDANIEL<br>P.O. Box 3077<br>Jonesboro, Arkansas 72403-3077 |
| By:<br>   Jess Askew III (Bar # 86005)<br>   *Attorneys for SMS Demag AG* | By:<br>   Paul D. McNeill (Bar # 79206)<br>   *Attorneys for Xtek, Inc.* |

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Agreement, made this 14th day of November 2007 by and between SMS Demag AG, a company organized and existing under the laws of Germany and having an office at Eduard Schloemann Straße 4, 40237 Düsseldorf, Germany (hereinafter called "SMS") and Xtek, Inc, a corporation organized and existing under the laws of the State of Ohio, United States of America, and having an office at 11451 Reading Road, Cincinnati, Ohio 45241-2283, USA (hereinafter called "XTEK").

## WITNESSETH:

WHEREAS, SMS has developed and owns patents, know-how, techniques, experience, technical data and information related to the design, engineering, manufacture, procurement, installation, erection, commissioning, operation and maintenance of tube spindles incorporated into rolling mills, described in more detail hereinafter;

WHEREAS, SMS owns the trademarks defined in section 1.3 below concerning rolling mills and parts and equipment used in rolling mills, described in more detail hereinafter;

WHEREAS, SMS filed an Amended Complaint against XTEK in the United States District Court for the Eastern District of Arkansas, Case No. 3:06-cv-00060-GTE, alleging claims for damages for patent infringement, trademark infringement, unfair competition, and misappropriation of trade secrets, and XTEK has filed an Answer and Counterclaims in the foregoing action (hereinafter called the "DISPUTE").

WHEREFORE, in the premises and in consideration of the mutual promises and obligations of the parties, the receipt and sufficiency of which SMS and XTEK hereby acknowledge, the parties agree to the following terms and conditions:

## ARTICLE 1 - DEFINITIONS

As used in this Agreement, the following terms have the meanings indicated below, unless the context clearly requires otherwise:

1.1     "Tube Spindle" means a geared mechanical power transmission shaft assembly for a rolling mill drive that rotates and is lubricated with circulating oil and in which the oil is transported from one end of the shaft to the other end by means of an annular oil return duct formed by a pipe surrounding the spindle shaft at a radial distance therefrom.

1.2     "SMS Patents" means United States Patent No. 5,979,207 and the other patents and patent applications owned by SMS which are set out in Appendix B hereto.

1.3     "SMS Marks" means (a) SMS, (b) SMS (with Design)® (United States Registration No. 1,330,533), (c) CSP® (United States Registration No. 2,691,937), and (d) CVC® (United States Registration No. 2,770,610).

1.4     "SMS Technical Information" means all technical drawings, manuals, and information containing measurements, specifications or materials for SMS rolling mills, including but not limited to any and all know-how, knowledge, experience, data, designs, drawings, calculations, dimensions, tolerances, and test results, that SMS has delivered or delivers to an SMS rolling mill owner.

## ARTICLE 2 - SETTLEMENT OF THE DISPUTE

2.1     Xtek acknowledges that SMS is the owner of the SMS Patents, the SMS Marks and the SMS Technical Information world-wide.

2.2     XTEK acknowledges the validity of the SMS Patents and the SMS Marks world-wide.

2.3     XTEK shall pay to SMS the sum of US$375,000 within ten (10) business days after the full execution of this Agreement in consideration of this Agreement.  XTEK in addition shall pay to SMS US$37,500 on July 1st annually for 10 years, with the first annual payment due on July 1, 2008 and the last payment due July 1, 2017.  All payments by XTEK under this Agreement shall be made by SWIFT in U.S. Dollars, at the risk of XTEK, into SMS's bank account no. 391 00 07 with Deutsche Bank, Düsseldorf, Germany, bank code 300 700 10.

2.4     XTEK shall either remove all SMS Marks from XTEK's brochures, information leaflets, reference lists, quotations and all written or electronic promotional literature within 60 days after XTEK signs this Agreement or, in the alternative, for printed materials, XTEK shall use a sticker or stamp bearing the Registered Trademark symbol with the SMS Mark and shall state conspicuously on the same page as the SMS Mark appears: "[State the SMS Mark] is owned by SMS Demag AG, and XTEK is not affiliated in any way with SMS Demag AG." XTEK shall change its Internet web sites to conform to this section of this Agreement within 60 days after XTEK signs this Agreement.

2.5     In the event that XTEK substantially alters or provides any equipment in any rolling mill initially constructed and supplied by SMS that includes a power transmission system, XTEK shall place a conspicuous notice on the power transmission system indicating that the equipment was supplied by Xtek, Inc., so long as the mill owner or the mill owner's designated representative permits this marking or notice.

2.6     SMS and XTEK consent to the continuing jurisdiction of the United States District Court for the Eastern District of Arkansas for all purposes relating to the enforcement of this Agreement.  The Court shall have the power, by agreement and consent of the parties, to enforce this Agreement and award appropriate relief pursuant to this Agreement, with respect to the conduct of the parties anywhere in the world.  The parties expressly declare their intention that this Agreement governs their conduct relating to this Agreement throughout the world.

2.7     Based on the consideration in this Agreement, and except for any and all rights and claims relating to enforcement of this Agreement, SMS, for itself and its subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, employees and agents, hereby releases and forever discharges XTEK, its subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, attorneys and their associated law firms, employees, agents and customers from any and all claims, demands, or causes of action of any nature whatsoever, at law or in equity, whether or not known, arising prior to the date of this Agreement that were brought or could have been brought in the DISPUTE.

2.8     Based on the consideration in this Agreement, and except for any and all rights and claims relating to enforcement of this Agreement, XTEK, for itself and its subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, employees and agents, hereby releases and forever discharges SMS, its subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, attorneys and their associated law firms, employees, agents and customers from any and all claims, demands, or causes of action of any nature whatsoever, at law or in equity, whether or not known, arising prior to the date of this Agreement that were brought or could have been brought in the DISPUTE.

2.9     Based on the consideration in this Agreement, and except for any and all rights and claims relating to enforcement of this Agreement, XTEK, for itself and its subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, employees and agents, hereby releases and forever discharges William Malan, a former employee of XTEK, from any and all claims, demands, or causes of action of any nature whatsoever, at law or in equity, whether or not known, arising prior to the date of this Agreement.

2.10    SMS and XTEK stipulate to the entry of a Consent Judgment in the DISPUTE in the form of attached Appendix C.

2.11    If either party reasonably believes the other may have violated the Agreement or the Consent Judgment, then the party who believes there may have been a violation shall first provide written notice to the other setting forth the basis for its claim. After providing this notice, the complaining party may request an audit by an independent and competent auditor at its own initial cost and expense. The auditor shall be disqualified from this engagement if the auditor represents or does work for any competitor of the other party. The other party shall cooperate with the auditor by supplying all information requested by the auditor concerning the claim in the notice so that the audit may be completed within 60 days after the auditor is appointed. The auditor shall provide a report to both parties. Any information that the auditor reviews will be confidential and will be used only to enforce this Agreement or the Consent Judgment. Before taking any action before the Court, the complaining party shall consult with the other party concerning the matter in a good faith effort to resolve any issues. If the complaint is not resolved by agreement, then, after consultation, the complaining party may bring a motion for appropriate relief before the Court. In the event that it is determined that the Agreement or Consent Judgment has been violated, the violator shall pay all fees and costs of the auditor, in addition to any other remedy that may be awarded.

## ARTICLE 3 - PERMITTED USE

3.1     Pursuant to this Agreement, XTEK may, only for the rolling mills specifically identified in Appendix A to this Agreement, make, use, offer for sale, sell, repair, or recondition Tube Spindles, subject to the limitations, conditions and requirements of this Article 3 (the "Permitted Use"). Otherwise, XTEK shall not sell, supply, manufacture, repair or recondition Tube Spindles or spare or component parts for Tube Spindles world-wide.

3.2     This Permitted Use shall terminate with respect to the stand(s) at a particular mill if the stand(s) in question is replaced such that a change in the Tube Spindle identification size from that set forth in Appendix A is required by the mill changes.

3.3     Beginning January 1, 2018, Xtek may furnish individual component parts of a Tube Spindle for any customer. However, Xtek shall not supply sufficient individual or sets of spare parts to build a complete or substantially complete Tube Spindle or convert an oil spindle to a complete or substantially complete Tube Spindle solely from those spare parts.

3.4     Upon the termination of this Permitted Use as to any identified mill, the limitations and restrictions set forth in this Agreement shall apply to that mill.

3.5     If XTEK engages in any Permitted Use at an identified mill pursuant to this Article 3, then XTEK shall place a conspicuous notice on the power transmission system indicating that the equipment was supplied by Xtek, Inc. so long as the mill owner or the mill owner's representative permits this marking or notice.

3.6      With respect to any Permitted Use, SMS acknowledges that XTEK may use SMS Technical Information to manufacture, recondition, repair or otherwise work on equipment, so long as the SMS Technical Information is used only for the mill and application within that mill for which SMS supplied the SMS Technical Information to the mill owner.  XTEK will use the same measures to protect the confidentiality of the SMS Technical Information that XTEK uses to protect XTEK's own confidential information.  The parties understand and acknowledge that with respect to any Permitted Use XTEK may be required to and shall have the right under this Agreement to create drawings, specifications, bills of materials and other technical information and materials in order to perform the work for the mill.  However, XTEK shall use all such information and materials solely for the Permitted Use, and XTEK shall not use any such information or materials for any work at any other mill.

3.7      If XTEK engages in any Permitted Use at an identified mill pursuant to this Article 3, XTEK shall, for a period of three years, maintain records sufficient to show (a) the mill involved, (b) the Permitted Use performed by XTEK, (c) any SMS Technical Information used in connection with the Permitted Use, and (d) XTEK's gross revenues and costs of materials for the Permitted Use.

## ARTICLE 4 - SMS TECHNICAL INFORMATION

4.      XTEK may use SMS Technical Information to manufacture, recondition, repair or otherwise work on equipment at SMS rolling mills, but only if the SMS Technical Information is used solely for the mill and application within that mill for which SMS supplied the SMS Technical Information to the mill owner.  XTEK will use the same measures to protect the confidentiality of the SMS Technical Information that XTEK uses to protect XTEK's own confidential information.  The parties understand and acknowledge that with respect to any work described in this paragraph, XTEK may be required to and shall have the right under this Agreement to create drawings, specifications, bills of materials and other technical information and materials in order to perform the work for the mill.  However, XTEK shall use all such information and materials solely for the work described in this paragraph, and XTEK shall not use any such information or materials for any work at any other mill.

## ARTICLE 5 - MUTUAL COVENANTS NOT TO SUE

5.1      The parties understand and acknowledge that XTEK intends to offer for sale and sell the spindle design concept that is attached and incorporated herein by reference as Appendix D to this Agreement (the "Design").  SMS covenants on behalf of itself and its successors and assigns that it will not sue XTEK on any claim raising the issue of whether the Design, or any Design improvement in which the oil flows from the drive end of the shaft to the roll end of the shaft by means of at least one longitudinal hole in the length of the spindle shaft and returns from the roll end of the shaft to the drive end of the shaft by means of at least one additional longitudinal hole in the length of the spindle shaft, infringes upon or violates the SMS Patents.

5.2      The parties understand and acknowledge that SMS may offer for sale and sell a spindle design concept that employs an oil-return system that may be comparable or similar to the Design or Design improvement described in paragraph 5.1 ("Similar Concept").  XTEK covenants on behalf of itself and its successors and assigns that it will not sue SMS on any claim raising the issue of whether the Similar Concept infringes upon or violates any rights or claims of XTEK.

## ARTICLE 6 - MISCELLANEOUS PROVISIONS

6.1      **Governing Law.**  Regardless of the place of contracting, place of performance, or otherwise, this Agreement and all amendments, modifications, alterations, or supplements hereto, and the rights of the parties hereunder, shall be construed under and governed by the laws of Arkansas excluding the conflict of laws regulations.

KWJ

**6.2    Non-Waiver of Defaults.** Any failure by either party at any time, or from time to time, to enforce or to require the strict keeping and performance of any of the terms or conditions of this Agreement shall not constitute a waiver of any such terms and conditions and shall not affect or impair such terms and conditions in any way or the rights of either party at any time to avail itself of such remedies as it has for any breach or breaches of such terms and conditions.

**6.3    Assignment.** This Agreement may not be assigned by XTEK, except to a successor to the business of the party (whether by merger, acquisition, consolidation, nationalization or otherwise, or another person, firm, company, corporation or other organization acquires control of XTEK ) or a purchaser of all or substantially all of the assets of the party ("Purchaser") which is subject to SMS written consent, which shall not be unreasonably withheld; SMS may withhold its consent in the event that Purchaser is a competitor of SMS in the rolling mill and or drive business. This clause applies to all subsequent purchasers.

**6.4    Amendment and Rescission.**    This Agreement shall not be modified or rescinded except by written instrument signed by authorized representatives of both parties hereto.

**6.5    Severability of Provisions.** Each and every provision of this Agreement is completely severable, and the invalidity of any one or more of such provisions shall not in any way impair the validity of this Agreement or of any of the other provisions hereof.

**6.6    Binding Agreement.** This Agreement shall be binding upon SMS and its affiliated and subsidiary companies, including SMS Demag LLC and SMS Pittsburgh. The parties agree that SMS Meer is not an affiliate or subsidiary of SMS. This Agreement shall be binding upon XTEK and all of its subsidiaries, affiliates, successors and attempted assigns; in addition this Agreement shall be binding upon any person or entity who purchases all or substantially all of the assets of XTEK's Tube Spindle business.

**6.7    Taxes.** Any taxes, duties or levies payable by virtue of the payments to be made by XTEK to SMS in accordance with the terms of this Agreement shall be borne by SMS.

**6.8    Costs.** Each party will bear its own costs and attorneys' fees and expenses.

**6.9    Audit.** SMS may request an audit by an independent and competent auditor at its own initial cost and expense once during every 12 month period that this Agreement is in force. The auditor shall be disqualified from this engagement if the auditor represents or does work for any competitor of XTEK. XTEK shall cooperate with the auditor by supplying all information requested by the auditor concerning compliance or noncompliance with the terms of this Agreement so that the audit may be completed within 60 days after the auditor is appointed. The auditor shall provide a report to both parties. Any information that the auditor reviews will be confidential and will be used only to enforce this Agreement or the Consent Judgment. In the event that it is determined that the Agreement or Consent Judgment has been violated, the violator shall pay all fees and costs of the auditor, in addition to any other remedy that may be awarded.

**6.10    Denial of Wrongdoing and Liability.** The parties deny any and all allegations of wrongdoing and liability in the Dispute. This Agreement does not constitute, and may not be construed as, an admission of any kind by any party with respect to any wrongdoing or liability whatsoever. Neither entering into, negotiating, nor performing the terms of this Agreement shall be construed as or deemed to be evidence of, any admission or concession of wrongdoing or liability by any party hereto.

**6.11    Merger and Integration.** This writing contains the full and complete expression of the agreement concerning the subject of this Settlement Agreement and incorporates all negotiations, understandings, promises, limitations, and obligations relating to this Settlement Agreement. There are no rights, obligations or duties under this Settlement Agreement except those set forth herein.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed on the date first above written.

For and on behalf of

SMS Demag AG

_____          _____

For and on behalf of

XTEK Inc.


_____          _____

KtbJ

**LIST OF APPENDICES**

Appendix A        Identified Mills

Appendix B        SMS Patent List

Appendix C        Stipulation of Dismissal

Appendix D        XTEK Design

8

## APPENDIX A

### Identified Mills

Nucor Berkeley CSP Mill (Identification Sizes 710 and 650)

Nucor Hickman CSP Mill (Identification Sizes 720 and 660)

Nucor Crawfordsville Cold Mill (Identification Size 380)

SDI Butler CSP Mill (Identification Sizes 720 and 535)

AK Steel Rockport Cold Mill (Identification Size 500)

**APPENDIX B**

### SMS Patent List

#### In the USA:

United States Patent No. 5,979,207

#### Outside the USA:

| Country | Application No. | Application Date | Patent No. | Granted on |
|---|---|---|---|---|
| Austria | 98104758.2 | 17.03.1998 | E 0222817 | 28.08.2002 |
| Belgium | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| Germany | 98104758.2 | 17.03.1998 | 59805275.5-08 | 28.08.2002 |
| Spain | 98104758.2 | 17.03.1998 | 2183247 | 28.08.2002 |
| Finland | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| France | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| Great Britain | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| Italy | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| The Netherlands | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| Sweden | 98104758.2 | 17.03.1998 | 0865837 | 28.08.2002 |
| Japan | 98/070623 | 19.03.1998 | | |
| Mexico | 982210 | 20.03.1998 | 209319 | 29.07.2002 |
| Russia | 98105023 | 19.03.1998 | 2198046 | 10.02.2003 |
| Brazil | PI 9800934-6 | 19.03.1998 | PI 9800934-6 | 05.08.2003 |
| India | 98/0570/MAS | 18.03.1998 | | |

**APPENDIX C**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

SMS DEMAG AG                                                PLAINTIFF

VS.                          NO. 3:06CV0060GTE

XTEK, INC.                                                 DEFENDANT

### CONSENT JUDGMENT

Based on the submissions of the parties and all matters appearing of record, the Court makes the following findings of fact:

1.    The Court finds that SMS Demag AG ("SMS") and Xtek, Inc. ("XTEK") have entered into a full and final settlement of all claims asserted in this action.

2.    The terms and conditions of the settlement are set forth in a written Settlement Agreement attached and incorporated herein by reference as Exhibit A to this Consent Judgment.

3.    The Court approves the terms and conditions of the Settlement Agreement and incorporates those terms and conditions into this Consent Judgment as additional terms and provisions of this Consent Judgment.

4.    Both parties have submitted themselves to the jurisdiction of this Court for all purposes in connection with the Settlement Agreement and this Consent Judgment.

Based on the foregoing findings of fact, the Court makes the following conclusions of law:

1.    The Court has jurisdiction over the parties and the subject matter of this action.

2.    In accordance with the stipulations and agreement of the parties, as set forth in the Settlement Agreement, the Court enters this Consent Judgment.

3.    The Court adopts the terms of the Settlement Agreement as the substantive provisions of this Consent Judgment. The mutual undertakings, obligations and duties of the parties as set forth in the Settlement Agreement are obligations and duties of the parties pursuant to this Consent Judgment,

KHS

and the Court may and shall enforce the obligations and duties of the parties set forth in the Settlement

Agreement as if they were set out word for word in this Consent Judgment.

4.     Both parties should be and are hereby permanently enjoined to abide by the terms of the

Settlement Agreement and this Consent Judgment.

5.     The Court will maintain continuing jurisdiction to enforce this permanent injunction.

6.     The protective order entered in this case shall survive the dismissal of this action.

7.     All other claims for relief and causes of action asserted in the complaint and counterclaim

should be and are hereby dismissed with prejudice, the parties to bear their own costs, fees and

expenses.

This is a full and final judgment on which execution and process may issue.

Dated:  November ____, 2007.



_____
Hon. G. Thomas Eisele
United States District Judge,
Eastern District of Arkansas


Stipulated and Approved by Counsel for the Parties:

WILLIAMS & ANDERSON PLC               WOMACK, LANDIS, PHELPS, McNEILL &
111 Center Street, 22nd Floor                 McDANIEL
Little Rock, AR 72201                      P.O. Box 3077
Tel. (501) 372-0800                        Jonesboro, Arkansas 72403-3077
                                           Tel. (870) 932-0900


By: _____            By: _____
    Jess Askew III (Bar # 86005)              Paul D. McNeill (Bar # 79206)

Attorneys for SMS Demag AG              Attorneys for Xtek, Inc.

**12**

**APPENDIX D**

